# Exhibit B

```
             IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
_____

 Philip Morris USA, Inc.,      ) Civil Action
 et al.,                       ) No. 1:20-cv-01181-KBJ
                               )
                 Plaintiffs,   )
                               ) Status Conference (via Zoom)
 vs.                           )
                               )
 United States Food and Drug   )
 Administration, et al.,       ) Washington, D.C.
                               ) March 8, 2021
                 Defendants.   ) Time:  11:00 a.m.
_____

            Transcript of Status Conference (via Zoom)
                          Held Before
            The Honorable Ketanji Brown Jackson (via Zoom)
                    United States District Judge
_____

                      A P P E A R A N C E S

 For the Plaintiffs:       Stephen D. Andrews
 (via Zoom)                WILLIAMS & CONNOLLY LLP
                           725 12th Street, Northwest
                           Washington, D.C. 20005

 For the Defendants:       Stephen M. Pezzi
 (via Zoom)                Eric Beckenhauer
                           U.S. DEPARTMENT OF JUSTICE
                           Civil Division, Federal Programs Branch
                           1100 L Street, Northwest
                           Washington, D.C. 20530
_____

 Stenographic Official Court Reporter:
 (via Zoom)                Nancy J. Meyer
                           Registered Diplomate Reporter
                           Certified Realtime Reporter
                           United States Courthouse, Room 6509
                           333 Constitution Avenue, Northwest
                           Washington, D.C. 20001
                           202-354-3118
```

1           P R O C E E D I N G S

2           (REPORTER'S NOTE: This hearing was held during the
COVID-19 pandemic restrictions and is subject to the
3       limitations of technology associated with the use of
technology, including but not limited to telephone and video
4       signal interference, static, signal interruptions, and other
restrictions and limitations associated with remote court
5       reporting via telephone, speakerphone, and/or
videoconferencing.)
6

7           THE COURT: So this is a status conference. Let me

8       have the parties introduce themselves for the record, beginning

9       with plaintiffs' counsel.

10          MR. ANDREWS: Good morning, Your Honor. Stephen

11      Andrews on behalf of plaintiffs, Philip Morris USA and Sherman

12      Group Holdings LLC.

13          THE COURT: Thank you.

14          MR. PEZZI: Good morning, Your Honor. Stephen Pezzi

15      from the Department of Justice on behalf of defendants. Also

16      with me today, although not appearing via video, is my

17      colleague from the Department of Justice Eric Beckenhauer.

18          THE COURT: Good morning to both of you.

19          So I called this conference because I'm trying to figure

20      out how to proceed with respect to this matter and that

21      involves attempting to ascertain what is being requested

22      concerning the motion for preliminary injunction. I noted that

23      we do not have a separate motion filed, which is typically what

24      happens when there's a PI, and then -- you know, a matter on

25      the merits. That this request for preliminary relief is

1   embedded in the summary judgment briefing, and as far as I can
2   tell, based on the notices and -- and the like that you-all
3   have sent, the effective date of the challenged rule is not
4   until April of 2022.
5          So I am really struggling to ascertain why it is that
6   the plaintiff needs injunctive relief right now and, even more
7   importantly, I think, why -- why the plaintiff thinks that I
8   have authority to provide such relief under these
9   circumstances.
10         Let me say that I understand from the materials that
11  have been put forward that plaintiff believes that it would
12  take more than a year to come into compliance with the rule,
13  but your position in the lawsuit, as far as I can tell, is that
14  the rule is unlawful and that you're challenging it.  So it
15  seems to me, under those circumstances, to be entirely up to
16  you whether or not you want to make the investments that would
17  be necessary to comply in the interim; that is, you know, do
18  you want to hedge your bets about winning this action or not.
19  If you win, then you wouldn't have to comply.  And if you
20  don't, then it seems to me that at that point you would have a
21  compelling argument concerning imminent or immediate
22  enforcement, given the lengthy litigation, given the good faith
23  challenge.
24         I don't know why at the point of actual loss you
25  couldn't either seek to negotiate with the government

1   concerning their success in the lawsuit and say, okay, you-all
2   won, now we need this time in order to come into compliance.
3   Or come to the Court at that point asking for the Court's
4   equitable -- an exercise of the Court's equitable authority
5   given the history of the litigation and the lawsuit and saying,
6   you know, can you enjoin enforcement for the amount of time
7   that it would take for us to come into comply -- into
8   compliance.
9           What I think really can't happen consistent with the PI
10  standards and my power is to essentially ask me to step in and
11  save you from the consequences of your litigation choices in
12  this way.
13          So let me ask, Mr. Andrews, what in law or equity would
14  permit me to issue a PI in a situation in which, for example,
15  you're not saying give me this PI because I'm likely to win;
16  you're actually saying give me this PI because I might lose.
17  And I don't understand that to be how a PI is really handled.
18          Mr. Andrews.
19          MR. ANDREWS:  Thank you, Your Honor, for the
20  opportunity.
21          And let me answer your question directly, but let me
22  also say I think, as you opened your remarks, the Court need
23  not grapple with this question today because of the orders that
24  have been entered in the Eastern District of Texas.  And I'll
25  comment on that in a moment too.

1           But to answer your question directly -- excuse me -- I
2   think that the reason that you could enter a preliminary
3   injunction were plaintiffs incurring irreparable harm at the
4   moment is for just that reason.  If the rule is, in fact,
5   unlawful -- and we hope to prevail on that before this Court.
6   But the rule requires, because it exists currently, plaintiffs
7   to incur compliance costs that cannot be recovered because they
8   would be monies spent that would not be necessary but for the
9   rule and could not be used by our clients but for compliance
10  with this rule -- and ultimately if the rule is invalidated,
11  all of that is money that would have been spent and wasted and
12  could not be recovered from the government.
13          THE COURT:  But can I ask you why are you saying that
14  the rule requires compliance costs?  The rule is -- doesn't say
15  pay this on this day right now.  Why couldn't -- couldn't you
16  choose not to because you're in litigation?
17          MR. ANDREWS:  You -- you could choose not to,
18  Your Honor.  I suppose we could make that choice, but we're
19  then on the horns of the dilemma, and -- and don't forget also
20  our papers point out there are other preliminary injunctions --
21  there are other irreparable injuries that are occurring right
22  now as well, which is prospective First Amendment injury, which
23  is other reputational costs.
24          But to your point, you could make that decision.  But as
25  soon as -- were -- were we to lose, the client would then be in

1    a position where they could not comply with the rule and would,
2    in essence, be prevented from selling their product throughout
3    the United States.  So it's really --
4              THE COURT:  What would -- what would prevent you from
5    coming if you lose and seeking the same kind of injunctive
6    relief you're seeking now?
7              MR. ANDREWS:  Well, Your Honor, your suggestion could
8    be workable if the Court would be willing to entertain such a
9    challenge.  But, again, it really is not a choice the plaintiff
10   can make because, again, if the plaintiff's challenge fails and
11   the plaintiff made the decision not to go ahead and prepare and
12   then did not prevail before the Court and the Court, for
13   instance, said this is a choice you made and I'm sorry you're
14   not in compliance, but you can't sell your product until you
15   can come into compliance in 15 months, that would be
16   devastating to plaintiff's business.
17             THE COURT:  I understand, but -- but -- I totally
18   understand.  I'm just trying to figure out what is the more
19   unreasonable scenario or -- but, you know, vice versa, what is
20   the more reasonable scenario.
21            When you're talking about a situation in which a rule is
22   effective immediately or is effective in a short period of
23   time, plaintiffs often come to court and they say we need to
24   enjoin this rule pending litigation because we're challenging
25   it, and we're saying we don't -- we will never have to comply

1  because we're going to win.  And under those circumstances, a
2  court legitimately evaluates the likelihood of success on the
3  merits and is essentially saying during the pendency of this
4  litigation, given the fact that this plaintiff -- the plaintiff
5  is not going to win -- or is going to win or is likely to win,
6  I'm going to set things up so that the plaintiff doesn't -- the
7  rule doesn't have to go into effect, the plaintiff doesn't have
8  to be deemed, you know, unlawful or behaving in an unlawful
9  fashion during the pendency of this litigation.
10          But as the defendants point out, that's not this
11  scenario given that the effective date of this rule is so far
12  off.  So it seems to me that what the defendant -- or what the
13  plaintiff is doing is saying there is a potential, a
14  possibility, that we might lose in April of 2022, and because
15  it takes so long to come into compliance, instead of us just
16  saying we think we're going to win -- there's not only a
17  likelihood, but a very substantial likelihood that we're going
18  to win and we'll never have to comply so we're just going to
19  wait and see what happens.
20          Instead of doing that, the plaintiff wants me to
21  evaluate the potential that you might lose and, therefore,
22  enjoin an effective date that's a year off.  I've never seen
23  that scenario before, and I understand that Judge Leon and
24  perhaps even the Eastern District of Texas has accepted it, but
25  to me it seems conceptually inconsistent with what the PI is

1    supposed to do.
2              MR. ANDREWS:  Your Honor, where I think we diverge is
3    in the fact that the -- the extent of the compliance costs that
4    would occur if plaintiff's not willing to make that gamble,
5    to -- to assure itself that it will win -- and, of course, we
6    hope and believe that we will win.  But even if we win, those
7    are costs that would be lost.
8         But I think, you know, to Your Honor's point again --
9    and if I may, you know, we conceded or admitted, I think, in
10   our reply brief around page 39 that should the Court's schedule
11   permit consideration of both the merits motion -- that is, the
12   motion for summary judgment -- and the preliminary injunction
13   and -- and have this debate together -- such that the Court
14   will be deciding the issue, which is also what the plaintiffs
15   pointed out, then we don't have a problem with that.
16        And particularly because of where we sit right now,
17   plaintiffs are not, in fact, incurring immediate compliance
18   costs right now.  Plaintiffs have been able to freeze their
19   compliance work as a result of Judge Barker's order in Texas,
20   which, as the Court saw from our notice of recent development
21   of March 2nd at Docket 65, Judge Barker has, again, postponed
22   the effective date of the rule, as you mentioned, Your Honor,
23   until April of next year.  And that 90 days, effectively, gives
24   the parties here until March 31st of this year before that stay
25   or that extension would expire.

1           Moreover, because the motions for summary judgment and
2    preliminary injunction before Judge Barker are fully briefed
3    and argued -- the argument occurred on December 11th of last
4    year -- given that that Court has postponed the effective date
5    now three times, it may be reasonable to conclude that
6    Judge Barker will either issue a decision or extend the
7    effective date further if needed.
8           As a result of all that, I think what we would propose,
9    Your Honor, is that the Court set a further status conference
10   or direct the parties to submit a joint status report to
11   address further developments in the Texas case before
12   Judge Barker sometime toward the end of this 90-day period,
13   which would be in the second half of May, because any decision
14   in the Texas court could materially impact the issues to be
15   considered by this Court, including, I think, the purpose that
16   Your Honor set this status conference, which is this question
17   of the propriety of or the need for a preliminary injunction.
18           THE COURT:  All right.  So you're basically
19   suggesting that I let Judge Barker and the Texas court take the
20   lead since they're further along in this -- the evaluation of
21   these issues?
22           MR. ANDREWS:  Well, what I think I'm saying,
23   Your Honor, is because the Texas case is parallel and further
24   along, you might want the additional information or
25   supplemental briefing to evaluate whatever the Texas court

1  decides.  And I'm merely suggesting that the stay or the
2  extension ordered now three times by the Texas court has
3  obviated for now the compliance concerns that we set out in our
4  papers in briefing the preliminary injunction to you before
5  those orders had entered.
6        THE COURT:  So why shouldn't I just deny the
7  preliminary injunction on that ground?
8        MR. ANDREWS:  Well, Your Honor, we would hope you
9  would hold it in abeyance.  We don't need it today.  If
10 something happens in Texas where Judge Barker decides to,
11 Your Honor, let that stay lapse or that extension lapse
12 entirely, then I think we would want the ability to brief or
13 argue to you why our view of the preliminary injunction and the
14 need -- that is, the irreparable injury -- is appropriate for
15 the Court to act now.
16      I understand the views Your Honor has expressed today.
17 I think we would need to take that up at that time, but as of
18 today we do not need the preliminary injunction now.
19       THE COURT:  Okay.  Mr. Pezzi, why shouldn't I just do
20 what plaintiffs' counsel is now proposing, which is essentially
21 just order another status conference in -- is it 90 days,
22 Mr. Andrews?
23       MR. ANDREWS:  Yes, Your Honor.  We would ask in
24 advance of that May 31st-or-so of this year date but, again,
25 consistent with the Court's calendar.

1               THE COURT:  And we'll see what happens in Texas and
2     then come back.  Would the government be amenable to that?
3               MR. PEZZI:  Good morning, Your Honor.  Stephen Pezzi
4     from the Department of Justice.
5          So I would say a few things.  First of all, I think --
6     as Your Honor has already noted in some of the Court's
7     questions, I think whether it ever made sense to have this case
8     briefed in a preliminary injunction posture, it certainly
9     doesn't make sense now, and I think the concessions from
10    plaintiffs' counsel this morning confirm that.
11         We now have fully briefed cross-motions for summary
12    judgment for which the legal issues will be largely the same as
13    the legal issues were the Court to address the pending motion
14    for a preliminary injunction.  And given that the rule now
15    doesn't take effect for more than 13 months, given that
16    plaintiff has conceded that they're not suffering any current
17    or imminent irreparable harm, the First Amendment harms that
18    plaintiffs referenced obviously wouldn't take effect until,
19    again, more than 13 months from now.
20         And so for the reasons that we've already briefed in our
21    opposition to plaintiffs' motion for a preliminary injunction
22    in -- and then in addition to the additional concessions we
23    heard this morning, I think Your Honor could and should simply
24    deny the motion for a preliminary injunction, which then, of
25    course, would still leave pending cross-motions for summary

1    judgment before this Honor.
2         I don't really agree that the case in the Eastern
3    District of Texas is meaningfully further along than this one.
4    They're both now fully briefed.  Cross-motions for summary
5    judgment, both here and in Texas, are ripe for decision.  I
6    understand plaintiffs have requested oral argument in this
7    case, but that's obviously up to Your Honor's discretion, and I
8    didn't hear today --
9         THE COURT:  Has there been -- has there been oral
10   argument already in the Texas case?
11        MR. PEZZI:  There has been argument in the Texas
12   case, but I didn't hear this morning a -- an immediate appetite
13   for argument from plaintiffs here.  And I don't think
14   Your Honor wants -- and I don't think the government wants --
15   this case to sit on Your Honor's docket indefinitely as a
16   placeholder or as a backup plan should things not pan out in
17   the Eastern District of Texas the way that Philip Morris is
18   hoping.
19        I think, obviously, how Your Honor manages the Court's
20   docket is up to Your Honor, but at this point, from the
21   government's perspective, there's fully briefed cross-motions
22   for summary judgment, there's a fully briefed motion for a
23   preliminary injunction.  We believe that for the reasons in
24   those briefs, the government should prevail on all of those
25   motions, and, you know, we stand ready to appear for argument

1       if the Court wishes to hold arguments, but, otherwise, for the
2       reasons in those motions, plaintiffs' motions should be denied
3       and the government's motion for summary judgment should be
4       granted.
5               THE COURT:  Okay.  I appreciate your argument,
6       Mr. Pezzi, and I do understand the concerns that you put
7       forward with respect to, you know, the -- the parallel nature
8       of these cases and the docket management.
9               But it is ordinarily my practice if there is a parallel
10      litigation that is even marginally ahead of mine insofar as the
11      other case has already been argued and the judge in that case
12      has taken steps to put off the effective date in- -- indicating
13      that -- that he -- I think it's he -- is actively looking at
14      the matter.  I -- I think it is not unreasonable for me to hold
15      off on analyzing this or even calling for argument until I have
16      the benefit of at least seeing what his analysis is since, I
17      take it, these are substantially similar, if not identical,
18      claims being brought in the two matters.
19              So I'm going to agree with Mr. Andrews.  I will set a
20      status conference in -- is it late May?
21              MR. ANDREWS:  Yes, Your Honor.
22              THE COURT:  And we can do so now, if you would like,
23      or I can look at my calendar and come up with a date.  Let me
24      look real quick, since we're all here.
25              I could see you on this matter in -- on May 24th, which

1    is a Monday.
2            MR. ANDREWS:  That would be convenient for
3    plaintiffs, Your Honor.
4            MR. PEZZI:  And May 24th should work for the
5    government as well.
6            THE COURT:  Okay.  So let me set this for -- we can
7    do it in the afternoon, 2:30 in the afternoon, on May 24th.
8            Hopefully at that point we will have at least heard from
9    the judge in Texas and have some idea whether or not
10   Philip Morris is going to continue to either press its request
11   for a PI or maintain its claims in the context of this case.
12   And if so, on that date we can talk about setting a hearing and
13   moving forward with the matter in this case.
14           I will say that if Philip Morris is going to try to
15   maintain that preliminary injunction as needed, we may have to
16   do supplemental briefing that addresses some of these questions
17   that, frankly, I think have not really been fully fleshed out
18   about the Court's jurisdiction, about the PI standards in a
19   circumstance such as this where, at least arguably, the harm
20   that Philip Morris is thinking about or talking about is --
21   is -- could be conceived of as self-inflicted to the extent
22   that they have a choice as to whether or not to incur these
23   costs pending litigation.  And no one's forcing them to do that
24   as far as I can tell.
25           And if they would like to do that, then it would seem

```
 1    that, you know, it's up to them or they can wait.  That's sort
 2    of, at least, my very preliminary view, and so I would need to
 3    have the parties really home in on that in any subsequent
 4    meeting or hearing concerning the preliminary injunction.
 5           But, for now, we will set this as a status conference at
 6    2:30 on May 24th; all right?
 7           Is there anything else that we need to address at this
 8    time?
 9           MR. ANDREWS:  Not from the plaintiffs, Your Honor.
10    Thank you.
11           MR. PEZZI:  Nothing from the government.  Thank you.
12           THE COURT:  Thank you.  Have a good day.
13           (The proceedings concluded at 11:23 a.m.)
```

1   CERTIFICATE OF OFFICIAL COURT REPORTER

2

3        I, Nancy J. Meyer, Registered Diplomate Reporter,

4   Certified Realtime Reporter, do hereby certify that the above

5   and foregoing constitutes a true and accurate transcript of my

6   stenograph notes and is a full, true, and complete transcript

7   of the proceedings to the best of my ability.

8

9                    Dated this 22nd day of March, 2021.

10

11                   /s/ Nancy J. Meyer
                     Nancy J. Meyer
12                   Official Court Reporter
                     Registered Diplomate Reporter
13                   Certified Realtime Reporter
                     333 Constitution Avenue Northwest, Room 6509
14                   Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25